21st MORTGAGE CORPORATION, Plaintiff v. DOUGLAS HOME CENTER, INC., A North Carolina Corporation, and JUDY C. DOUGLAS, Defendants

No. COA07-179

(Filed 18 December 2007)

**Pleadings— unverified pleading—affirmative defense—motion for summary judgment improper**

The trial court erred in an action to recover monies owed after defendants' default of a loan by granting summary judgment in favor of defendants, and the case is reversed and remanded to the trial court to hear the case on the merits, because: (1) a trial court may not consider an unverified pleading when ruling on a motion for summary judgment; (2) defendants' motion to amend their answer included an unverified amended answer asserting an additional affirmative defense; and (3) defense counsel argued this affirmative defense at the hearing on the parties' motions for summary judgment, and thus the trial court improperly granted defendants' motion for summary judgment based on the unverified pleading.

**21st MORTGAGE CORP. v. DOUGLAS HOME CTR., INC.**

[187 N.C. App. 770 (2007)]

Appeal by plaintiff from order entered 24 July 2006 by Judge Timothy Kincaid in Catawba County Superior Court. Heard in the Court of Appeals 10 October 2007.

*Fletcher & Rhoton, P.A., by John W. Fletcher, III and Bryan W. Stone, for plaintiff-appellant.*

*No brief filed for defendants-appellees.*

CALABRIA, Judge.

21st Mortgage Corporation ("plaintiff") appeals from order granting summary judgment in favor of Douglas Home Center, Inc. ("defendant DHC") and Judy C. Douglas ("President Douglas") (collectively, "defendants"). We reverse and remand.

On or about 23 April 2001, defendant DHC, through President Douglas, entered into an Inventory Security Agreement and Power of Attorney ("the Agreement") with Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt") which, *inter alia*, provided for the financing of defendant's purchase of multiple modular homes to serve as its operational inventory. Pursuant to the terms of the Agreement, defendant DHC agreed to finance the purchase of new and pre-owned inventory, and as a condition of the financing, granted Vanderbilt a security interest in the inventory, equipment, fixtures, proceeds, and rights against suppliers. President Douglas also personally guaranteed all payments due under the Agreement. On 1 February 2004, Vanderbilt assigned all of its rights, title and interest in the Agreement to the plaintiff.

Defendant DHC defaulted under the Agreement by failing to make monthly payments. Plaintiff proposed a "work out" plan to allow defendants to cure the default. Defendants failed to cure the default and plaintiff sent President Douglas a formal notice of default and demand for payment in the amount of $414,688.12, which represented the deficiency on the resale of any repossessed merchandise, any repossession cost, interest charges, and any other cost or expenses including attorneys' fees. On 11 July 2005, President Douglas, on behalf of defendant DHC, gave plaintiff written notice that as of 15 July 2005, the lot was closing and asked plaintiff to pick up "your homes" by the end of the month.

On 27 July 2005, plaintiff responded to President Douglas' letter, and warned President Douglas that "with the age of the units" there would be a deficiency after the sale of the homes.

Plaintiff sold the homes which had secured the loan in order to recover the amount defendant DHC owed, but alleged that defendant DHC still owed plaintiff a deficiency in the amount of $137,085.00, not including attorneys' fees and costs. As a result of the deficiency remaining on the defendants' account, plaintiff filed a complaint on 14 October 2005 against both defendant DHC and the personal guarantor, President Douglas, seeking to collect the monies owed by both defendants.

On 31 May 2006, defendants filed a motion for summary judgment but did not state the grounds for the motion. In addition, defendants filed a motion for judgment on the pleadings. Subsequently, President Douglas signed an affidavit stating that plaintiff issued an IRS form 1099-C, "Cancellation of Debt," ("1099-C form") and as a result of issuing this form, defendant DHC's debt was cancelled. Defendants had not previously pled the affirmative defense of waiver or forgiveness of a debt in their answer or counterclaim. On 5 July 2006, Karla Whitfield, assistant controller for plaintiff, signed an affidavit stating the issuance of the 1099-C form was a clerical error, and that plaintiff subsequently delivered to President Douglas a voided 1099-C form via Federal Express.

On 5 July 2006, plaintiff responded to defendants' motion for summary judgment with a memorandum in support of its motion for summary judgment. In the memorandum, plaintiff argued that its issuance of the 1099-C form did not cancel plaintiff's right to collect the debt. On 6 July 2006, defendants filed a motion to amend the answer, seeking the trial court's permission to plead, as an affirmative defense, plaintiff had cancelled defendants' debt. Accompanying defendants' motion to amend the answer was an affidavit signed by Linda Young, a staff accountant, who was not affiliated with either plaintiff or defendants, and who had prepared defendant DHC's 2005 state and federal income tax returns. In her affidavit, Linda Young stated defendant DHC had included an entry of $100,169.44 in its 2005 state and federal tax returns. In addition, Linda Young noted the plaintiff, a creditor of defendant DHC, sent the 1099-C form to defendant.

On 10 July 2006, at the hearing on the parties' joint motions for summary judgment, plaintiff objected to the court's consideration of defendants' seventh affirmative defense alleging it had not been properly pled. The court did not rule on defendants' motion to amend, and granted defendants' motion for summary judgment, finding "this debt has been discharged." Plaintiff appeals.

On appeal, plaintiff argues the trial court erred by (1) failing to rule on defendants' motion to amend before granting defendants' motion for summary judgment; (2) granting defendants' motion for summary judgment and judgment on the pleadings when defendants' motion was premised on an affirmative defense that was not timely pled; (3) granting defendants' motion for summary judgment when genuine issues of material fact existed; and (4) granting defendants' motion for summary judgment when defendants failed to present evidence of actual detriment and plaintiff demonstrated that it never intended to forgive defendants' indebtedness.

We first address plaintiff's contention that the trial court erred by granting defendants' motion for summary judgment. On appeal, this Court reviews an order granting summary judgment *de novo*. *McCutchen v. McCutchen*, 360 N.C. 280, 285, 624 S.E.2d 620, 625 (2006).

> Where a summary judgment motion has been granted the two critical questions of law on appeal are whether, on the basis of the materials presented to the trial court, (1) there is a genuine issue of material fact and, (2) whether the movant is entitled to judgment as a matter of law.

*North River Ins. Co. v. Young*, 117 N.C. App. 663, 667, 453 S.E.2d 205, 208 (1995) (citation omitted). "On appeal, review of summary judgment is necessarily limited to whether the trial court's conclusions as to these questions of law were correct ones." *Ellis v. Williams*, 319 N.C. 413, 415, 355 S.E.2d 479, 481 (1987).

In the case *sub judice*, the pertinent procedural actions leading up to the trial court's ruling on the parties' motions for summary judgment are as follows: plaintiff filed its complaint against defendants. Defendants then filed their verified answer alleging six affirmative defenses. Defendants subsequently filed their motion for summary judgment and judgment on the pleadings. Plaintiff then filed a motion for summary judgment.

On 5 July 2006, plaintiff submitted to defendants the grounds for plaintiff's motion for summary judgment. On 6 July 2006, defendants filed a motion to amend the answer, seeking the court's permission to plead their seventh affirmative defense: that plaintiff had cancelled defendants' indebtedness by sending to defendants the 1099-C form. Accompanying defendants' motion to amend was Linda Young's affidavit, who had prepared defendant DHC's 2005 state and federal income tax returns. On 7 July 2006, defendants filed a memorandum

stating the grounds upon which they relied in their motion for summary judgment.

·At a 10 July 2006 hearing on the joint motions for summary judgment, defendants sought to argue the seventh affirmative defense. Defense counsel argued to the trial court that after plaintiff filed its complaint, defendant DHC received the 1099-C form which purportedly cancelled the debt in the amount of $100,169.44. Defense counsel also argued to the trial court, "[s]o our summary judgment motion basically says you can't have it two ways. You can't sue someone for a debt and then turn around and file a 1099 and cancel it and take the tax benefits that obviously will come to [plaintiff]."

Plaintiff, through counsel, first objected to defendants' motion for summary judgment based on the 1099-C form. Plaintiff's counsel objected on the ground that defendants based their motion on a defense that was never made part of their answer. Plaintiff's counsel further asserted that defendants argued this seventh defense without giving the court an opportunity to hear defendants' motion to amend the answer regarding the 1099-C form. After counsels' arguments, the trial court granted defendants' motion for summary judgment. In granting defendants' motion, the trial court based its ruling on defendants' seventh affirmative defense and found, "this debt has been discharged."

This Court addressed a similar issue in *Tew v. Brown*, 135 N.C. App. 763, 522 S.E.2d 127 (1999). In *Tew*, the defendant filed a verified answer to plaintiff's complaint. *Id.*, 135 N.C. App. at 764, 522 S.E.2d at 128. Subsequently, defendant filed a motion to amend his answer for the purpose of asserting an affirmative defense. However, the amended answer was unverified. *Id.* Plaintiff then filed a motion for summary judgment. *Id.* At the hearing for both motions, the trial court did not rule on defendant's motion to amend his answer but granted plaintiff's motion for summary judgment. *Id.*, 135 N.C. App. at 765, 522 S.E.2d at 128. This Court held "the trial court may not consider an unverified pleading when ruling on a motion for summary judgment." *Id.*, 135 N.C. App. at 767, 522 S.E.2d at 130 (citation omitted).

Here, the defendants' motion to amend their answer included an unverified amended answer asserting an additional affirmative defense. At the hearing on the parties' motions for summary judgment, defense counsel argued this affirmative defense, and the trial court granted defendants' motion for summary judgment based on

this affirmative defense. Thus, the trial court granted defendants' motion for summary judgment based on the unverified pleading, which the trial court may not do. Therefore, summary judgment was not proper. We reverse the decision of the trial court granting defendants' motion for summary judgment, and remand to the trial court to hear the case on the merits.

As a result of our decision, we need not reach plaintiff's remaining assignments of error.

Reversed and remanded for further proceedings.

Judges McCULLOUGH and STEPHENS concur.